1-2-1-9-0-3, 1-2-2-1-9-9, 1-3-1-7-4-8, United States of America v. Lamont Watson, Sean Smith, and Isaac E. Arvin, if not to exceed 10 minutes for each appellant, 30 minutes for appellee. Mr. Shadd, Mr. Escobedo, and Mr. Cohen, four appellants. All right. If the defendant's attorneys could tell us how you are organizing yourselves. Yes, Your Honor. I'll be first. I'm going to divide my time 8 minutes and 2 minutes. Mr. Escobedo is second. He'll be dividing his time 8 and 2 as well. And then Mr. Cohen is the same, 8 and 2. He'll be bringing up the rear. Got it. And Your Honors, may it please the Court, I'm here this morning representing Lamont Watson, and I have reserved 2 minutes for rebuttal. The issue that I'd like to address to the Court's attention today is the substitution of counsel issue, which is my issue number one in the brief. And we would submit that the record is clear that there was such a breakdown in communication between defense counsel and the defendant in this case that substitution of counsel had to occur in order to enforce the Sixth Amendment in this case. And what the district court did, and when you look at the MAC factors, one of the inquiries under MAC is the issue of the adequacy of inquiry into the matter. And we would submit that there are two problems with that. Number one, the Court utilized the wrong standard when it determined that there didn't need to be a substitution in this matter. And it's on page 71 or 3175 page ID of the transcript in this case. The Court said, we have a mentally competent counsel and we have an effective attorney that's ready, willing, and able to go forward, therefore we're moving forward and there's no substitution. And that, in and of itself, is the wrong standard because if you take that as the standard, you don't have to worry about any communication between the defendant and defense counsel. That's not the only thing he said. It's not the only thing he said, but it was critical to his decision-making process, which brings me to the second part of that issue, which is the Court made a factual finding that defense counsel was ready, willing, and able to proceed. There is nothing in the record that would support that factual determination. As a matter of fact, everything that's in the record supports that this defense counsel was not only not ready, willing, and able to proceed, but was openly antagonistic to moving forward with this particular defendant. It's a fairly unusual case because the defendant files this motion to, it's like a motion for ineffective assistance of counsel that he files. And there's an immediate, on the very same day, there's an immediate response by defense counsel, which is unusual. And in that response, defense counsel says, I can't move forward. I'm going to violate disciplinary rules if I move forward. I can't work with this person. And, by the way, I'm not going to drive an hour and a half to go see this person when it's just going to be a fruitless conversation. Then he gets into court, and he reiterates that to the judge over and over and over again. And as a matter of fact, after the time, the Court makes this finding that the defense counsel is ready, willing, and able to move forward, and that's on 3175. On 3177, Mr. Dunn speaks up again and says, no, I'm not ready, willing, and able to go forward because we have this conflict, and every time I communicate with my client, the only thing I feel like is that he's setting me up for an ineffective assistance of counsel claim. Why isn't this a fair assessment of this record? The defendant, one could say, was quite clearly trying to manipulate the whole procedure. He'd become unhappy with his counsel previously. Here he is, unhappy again. His comments in court don't suggest that he was, in fact, cooperating to work with his counsel. He seems mostly determined to, as was noted, concentrate on an ineffective assistance of claim now or in the future. It's a little unusual that the defense counsel made such a record of that. That's a little unusual. But not necessarily when you consider kind of the defensive posture in which he was already put, perhaps unwise for their future relationship, but not unjustified. And so the district court is faced with a multiple defendant trial.  Is he going to continue this whole case again because he's got a defendant pulling his chain? Probably not. It's time for him to show who's in charge and tell the defendant it's time to go to trial no matter what's going on. Now, why isn't that a fair assessment of what's going on? I think it's a fair assessment of what went on in the case up to the point at the end, the conclusion that you get to that the district court made, because the cases have said that in them . . . Well, I mean, at the end, you're not to the point where trial is imminent, there are many pressures to go forward, the other defendants have rights in this matter, and so on and so forth. I would note that it's not the eve of trial. It's three weeks before the trial. Well, for a case of this type, you're not going to appoint somebody three weeks out who's going to be ready to go. I would agree, but more than that, in those type situations where there's been these multiple changes in counsel, and there's this recalcitrant defendant, what happens is that the district court says, look, your choices are pretty clear here. Either you're electing to go pro se by not cooperating with your counsel, or you're going to start cooperating with your counsel. That's what district courts do. That's the Marrero case. In this case, that's not what happened. Instead, the district court forced defense counsel to move forward when it was clear that defense counsel was not, at that point or in the future, going to act necessarily in the best interest of the client, because . . . I don't think it's apparent he wasn't going to act in the best interest of the client. It's very apparent he was finding it extremely difficult to represent this client, and he is unusually candid in letting the court know why. Well, let me suggest that not only his pleading that he filed the day that his client filed the motion for ineffective assistance of counsel, which was pretty unusual, but then even during the hearing itself, he was disclosing attorney-client privilege communications with regards to plea negotiations, with regards to his advice as to moving forward with the trial. It is not clear from that record on Record 581 that he was acting at all in the best interest of his client. He was acting in the best interest of, number one, wanting to get off the case, and number two, trying to save himself from a claim down the road. You believe he was trying to paint his client in an unfortunate light with the court. Absolutely. I don't think there's any question that he was attempting to do that. And again, what we have here is we have, at the end of the day . . . I guess the defense counsel should just stifle it in the interest of not saying too much. Well, you don't want to . . . I mean, that's what most people would do. Or you have an ex parte hearing, or you get an attorney-client waiver of privilege from the defendant before you go forward with these allegations. There's a lot of things that you can do, which weren't done in this case. But at the end of the day, this is defense counsel seeking to . . . He is so afraid of an ineffective assistance at counsel claim that that's his focus and not the defense of the client, and that's where the rubber meets the road, and that's why we have a violation of the Sixth Amendment in this case. I see that my time is up, unless there are any other questions. Thank you. Okay, Mr. Escobedo. Good morning. May it please the Court, Elias Escobedo appearing on behalf of Mr. Sean Smith. I'm asking the Court, with respect to Issue No. 1, the question of individual liability as to quantity, to rely on my brief. I'm going to address the issue of the multi-conspiracy jury instructions, specifically 3.08 and 3.09 of the Sixth Circuit pattern jury instructions. In this particular case, unlike the case in United States v. Warner, we have a multi-defendant, multi-drug conspiracy indictment. Now, the indictment, in fact, references two conspiracies. There is the marijuana conspiracy that's alleged with respect to three co-defendants, and then there is the first count, count one, which has to do with the conspiracy associated with other controlled substances. I was trial counsel with respect to this particular case on behalf of Mr. Smith, and unlike Warner, in this case, I objected. Well, first of all, I asked the Court to include the specific instructions 3.08 and 3.09 with respect to multiple conspiracies. There was a charge conference during which I asked for that instruction or instructions to be given. The Court did not agree with that. I objected ultimately with respect to the Court's denial of my request. In our particular case, the distinction between Warner and this case is in Warner, defense counsel didn't ask for the multiple conspiracy instruction. Defense counsel didn't object when the multi-conspiracy instruction was not given. This Court concluded that in a case where you have some evidence of other conspiracies or conspiracy, that the proper decision would be to allow defense counsel to have those two instructions. In this particular case, Mr. Smith, through my cross-examination, we did, in fact, cross-examine three defendants who specifically unindicted, or cooperating defendants, I should say, who, in fact, admitted, in particular, Ronald Trotter, who was the expert consultant with respect to the marijuana grow that Watson had going on at this home on Wyoming Street in Flint. Trotter testified that he had been to this location any number of times, that he had never met my client, Mr. Smith, that he did not, and while in court, during the course of trial, on my cross-examination, I asked him to identify whether or not he could identify who Mr. Smith was, and he could not. That clearly isn't the test, though. It's common in conspiracies, particularly large conspiracies, for many of the conspirators to not know each other. That's correct. That's my understanding. The other thing, too, in connection with your argument on this point, Smith wasn't, let's assume there was another conspiracy, but he wasn't held accountable in any way for what occurred following your theory that there was a separate conspiracy. He was not accountable because the district judge, when the jury raised the question with respect to individual liability, the court would not provide a supplemental jury instruction as requested by defense counsels. Rather, it was my position that given the testimony that had evolved and had been elicited by the government, that, in fact, Mr. Smith wasn't, and Mr. Smith and, I believe, one or two other co-defendants were entitled to the multiple conspiracy instruction. In the case of U.S. v. Seguin's, and I don't know if I'm pronouncing that correctly, but the site is 17-Fed-3-8-47, this court held where some evidence of potential multi-conspiracies or separate agreements exist in a trial record,  it's my position that the judge took from the jury that fact-finding requirement to determine whether or not there were multiple conspiracies, took it upon himself to make that determination, and I agree with you, Judge Guy, that because these individuals may not have known each other, that's not conclusive whether or not there are multiple conspiracies, but it is a factor. It is a factor to be considered. As many other factors. In this case, we had a Demetrius Knapp who testified that he, in fact, had had a number of transactions with Mr. Smith, but that it was just he and Mr. Smith, and that his buyer-seller, it was my position that this was a buyer-seller arrangement between Demetrius Knapp and Mr. Smith. Now, a jury could conclude, especially if you look at Instruction 3.09, that instruction clearly gives the jury an explanation of what to look for in determining whether or not there are multiple conspiracies. The judge, even though there was a question raised, the district judge did not permit defense. The opportunity to have that instruction read to the jury. Had it done so, the jury may very well come up with the same conclusion, but in this case where you have two conspiracies in the indictment that have been alleged, you already have, if you will, sufficient evidence that would call for the providing of those two instructions to the jury so that they could make a factual determination. Because obviously during the course of deliberations, they had a question. And the question was, it went with, how do we determine individual liability? So, I mean, the reversible error that occurred in this particular case was that where you have a case where there are multiple conspiracies charged, where defense counsel has asked for these instructions, where the facts and the testimony and the evidence elicited at trial is more than just some evidence or a small portion of evidence, those are requirements that I would assume dictate to the court to err on the side of caution and to grant the reading of those two instructions. If the court has no other questions. Mr. Cowan. May it please the court, my name is Chris Cowan. I represent Isaac Meeks. I'd like to reserve two minutes for rebuttal. I'd ask to adopt all the arguments in my briefs. I want to focus on one issue that involves really three arguments. That's the supplemental jury instruction that was given in the jury question. The jury asked... I'm sorry. I beg your pardon? Was the supplemental instruction consistent with the original instruction? The supplemental instruction was consistent with the original instruction. We submit that it was there. The original instruction was there. The original instruction was there and the supplemental instruction was there as well. I'm trying to get, is there a light between the two? I mean, did you object to the original instruction? I was not counsel at all. Well, you're counsel, I mean, sorry. Did counsel below object to the original? There was no objection to the original instruction. So how can you object to... If the original... I can just see how a judge would want to instruct consistent with the original, unobjected to instructions. Because... That's a concern I have. I mean, it's my position that the counsel frankly or simply I think overlooked the fact that they had not... They had these individual blanks for each defendant and they hadn't instructed them to attribute quantity for each defendant. They realized that because the jury, who oftentimes are smarter than the lawyers, crystallized the issue for the court... But still I'm having trouble seeing this is plain error then, right? Because it's... Assuming the judge doesn't want to confuse the jury by changing the instructions halfway through. The original... You're saying that the original instructions were wrong, albeit not objected to. Well... Is that right? I'm saying that it was error and not that the supplemental instruction was wrong. And that it's... But in order to do what you wanted with respect to the supplemental instruction, they would have had... The judge would have had to say, no, I was wrong before. Do it this way instead. Is that correct? The judge would potentially have to make that determination. But I would submit to the court... There's no way he could... Is there a way he could not have... Absolutely. He could have come back and said, we need to clarify this issue. So it would have been a clarification as opposed to a change? Yes, yes, sir. But it would have been... Can you explain that a little bit? It seems like it would have been a change to me rather than a clarification. If you say, go right, well, I want to clarify that and say go left, that's a change. You can call it a clarification, but it's different, right? Well... Before you have... You have a verdict form that calls for individualized findings. And then you have an instruction that says conspiracy as a whole. The jury's trying to figure out, for a minor player, do you go with the conspiracy as a whole or do you go with the individualized... But the original instruction did say conspiracy as a whole. It did. Okay. It did. Now, and I would submit to the court the court had an opportunity to cure it, and the standard was abuse of discretion to cure it at that point. This instruction that the court was giving was entirely consistent with the pattern instructions. The pattern instructions are not binding on... I understand that. I understand their status. But just answer the question. It was. It was consistent with the pattern instructions. But that being said, the pattern instructions were predicated on the Robinson case. And with Dukander, the Robinson case only addressed one piece of an issue on how to attribute drug... Well, doesn't Robinson address the only part of the issue that relates to what the jury finds at trial? Actually, it does not. Well, what other one is decided by the jury? In Robinson, the jury came back with the question, does the defendant need to know the quantity that's involved? That was the issue, knowledge. We all agree. I don't think there's any dispute that knowledge is not required. It is one way to get to... Well, so what does that have to do with the question I ask you? Well, there's another way. I'm asking you if the only issue that the jury ever has to find that relates to liability as opposed to sentencing is the drug quantity, other than the original elements of the offense. This is the only sentencing issue that a jury has to decide. It's a sentencing issue. I'm not sure... It's the only sentencing issue the jury has to decide. I agree with you on that, yes. And the reason the jury has to decide it is because the Supreme Court has told us so. Isn't it? And what the Supreme Court did is conceptualize of drug quantity as an element of the offense rather than as a sentencing factor, correct? Yes, ma'am. And everything else that goes to how you use drug quantity is a sentencing factor, not an element of the offense, correct? I'm not quite sure I followed that. Well, things like whether it was reasonably foreseeable to the defendant, things like how much a defendant was involved in, all those are things that are decided at sentencing, and the court may indeed decide those. There's some other things that are relevant, but they're not decided by the jury, right? I disagree with that. What's decided by the jury? You just told me it was the only thing the jury decides that relates to sentencing. Right, the jury decides quantity the way they decide it and the way the Swiney decision held it and the way Kaver held it and the way none of the circuits held it. Swiney is a sentencing case that does not involve a jury finding about drug quantity, correct? It involves mandatory minimum punishments. Well, it involves... It's a sentencing case. I can give you respectfully five or six cases that apply Apprendi to... I looked at all these cases yesterday, and here's what I think the takeaway is. The takeaway is that Robinson deals with the classic situation in which the jury is deciding, because the Supreme Court has told us it must, the drug quantity, and in that decision, the court does not make an individualized finding as to each defendant. It finds the amount of drugs involved in the offense. Obviously, the defendant's not guilty unless the other elements are met, but we are looking at what Robinson was looking at, which is the quantity involved in the overall conspiracy, and it doesn't differ from defendant to defendant. Yeah, but I guess the distinguishing factor is Robinson addressed Monsreau. The issue that was not decided was called... Well, it doesn't matter. I'm not asking you what the jury has to decide in order to find drug quantity. The jury has already found that the defendant had the intent to participate in the conspiracy. He wouldn't be convicted of conspiracy in the first place, and we wouldn't be to the point of considering the quantity of drugs that are involved in the conspiracy as a whole, right? I'm not... You lost me on the last part. I think I understand what you're driving at, and I guess my point is the jury ultimately determines quantity, and the way they determine it, I understand Robinson decided to answer the question, do you have to know, and the answer is no, you don't have to know, but what Robinson did not answer is causation, and that's the instruction that was tendered. An individualized instruction as to causation is required, you say? The instruction that Mr. Meeks' counsel requested was mentioned nothing about knowledge or intent. It mentioned a defendant being liable for the acts he directly involved and foreseeable to him. It was a causation. That's a sentencing thing, I would say, not a jury thing at trial. Well, certainly, I would say, I know my time's expired. It is, and I've been taking most of your time because I've been kind of arguing with you about it, but I was interested in how these cases shake out, and I can't see Robinson as anything but a straightforward application of a well-known principle. Well, a well-known principle on knowledge, but not on causation, and I understand you said that's a sentencing issue. Al Ain changed that because now a judge doesn't have the luxury of fixing a sentence to a lower amount because of the mandatory minimum. Well, I mean, we don't adjust that at trial in any way. It just is. Well, you know, I beg to differ. In the James case, 11th Circuit, footnote 1, they note that while it wasn't raised, it was an Al Ain issue, and they had an issue with it. The Bacon case, 11th Circuit, found an apprentiere on this very issue. The Collins and Brooks cases, the exact same thing. The Banvales-Ruiz-Morenquez, 9th Circuit, same thing. They apply it from the standpoint of this test. All of them apply the direct involvement foreseeability test. Okay. I think you're done. Unless somebody else had a question. Good morning, Your Honors. May it please the Court, Craig Weininger on behalf of the United States. Your Honors, I'd like to pick up my argument with where Mr. Cowan just left off, and that is the jury instruction issue and Robinson. And Judge Rogers, the Court is correct. The question is whether or not the supplemental instruction varied from the earlier instruction, and whether or not it was an abuse of discretion for the district court to refuse to change the instruction it gave by then requiring an individualized drug quantity finding a day after the jury began deliberating. And this Court did not abuse its discretion for a number of reasons, most notably because the instruction it gave was a correct statement of the law. Robinson decided this issue for the district court, and it had made the law in the 6th Circuit. Can I ask how this works exactly? And I don't have the depth of knowledge of my colleagues up here. The way it works is when you're talking about a statutory minimum where the jury has to find facts that get you into that higher statutory minimum, all of the drugs in the conspiracy are counted, even if those profits were accumulated and spent and gone  Actually, I think the way it works is that the conspiracy as a whole, the agreement is what drives the threshold. And whether or not the agreement, the conspiracy, involved those quantities, then it drives the threshold. Well, when you say it involved them, could it have involved them last year before you joined the conspiracy? I think commonly a conspiracy is ongoing and enduring. That's not answering my question. Now, I'm asking to be educated here. You can join a conspiracy after it's done a lot of bad things, including buying and selling drugs. And those sold and bought drugs count towards the total for the other members of the conspiracy who have been in it all along, and for this limited purpose of the statute and the statutory minimum, also apply to this person who joined the conspiracy after a considerable amount of those drugs have been bought, sold, and profited from and enjoyed and so forth. Is that right? I don't believe so, Your Honor. Well, what's the difference then? I don't understand. I thought that's what you were arguing. Withdrawal relates to something else, I would say, rather than this, but why not? I guess what I'm focusing on, or what I tried to focus on, is in this case that isn't what happened. I'm trying to ask what the law is. I apologize. All right. No apology necessary. The law is that you can have an ongoing conspiracy that you can join after drugs have been purchased and sold and enjoyed the profits thereof. Is that true? Yes, Your Honor. All right. So if you have three people in a conspiracy, say, I'm speaking just on the law, two of them buy and sell a whole lot of drugs. They accumulate a million dollars. They go to Mexico. They have a great time. The conspiracy is ongoing, and now Person 3 joins that conspiracy. All three of them are tried. There's a total amount of drugs in the conspiracy over the conspiracy period, and they all are attributed all the drugs for that ongoing conspiracy, not for sentencing guideline purposes, but for statutory minimum purposes in the statute where you have to have a jury determination. All of those drugs are attributed to each of the three. Is that correct or not? That is correct. Is that a little bit strange that you can join a conspiracy and then have a statutory minimum that applies to you for drugs that were bought, sold, and the profits thereof enjoyed before you even joined the conspiracy? I mean, how does that? Why would the law provide that? What I think, and I think Robinson dealt with this specifically, is that the law does not seek to punish those prior drug deals themselves as acts. And this is the distinction with, for instance, Swiney, which is discussed, and Pruitt, which is discussed, in which courts attempted to go back and punish past drug deals. What the law punishes is the agreement that each defendant participated in. Sure, I have no problem with the agreement. It's saying you get a minimum amount of time in jail, and that minimum depends on something that happened before you joined the conspiracy. And that's why I guess I would differ with the court. But you just said that was the case, though. I think conspiracies involve drugs that go on for a number of years. But I don't think that's what's punished. I think what's punished is the scope of the agreement that was entered and participated in by each defendant. But he agreed to join a conspiracy where you already earned and lost a million dollars or a million pounds of marijuana or whatever. So he agreed to that, so he's punishable for that. But it seems strange that he individually would get a statutory minimum based on an amount that's already been enjoyed. And I guess that's the distinction I'm trying to make. I think you ought to admit that that's true. And just—I mean, you know, it's true. I mean, Congress chose—that's part of the fall of mandatory minimums. Congress chose to eliminate an individualized consideration of fault in the context of application of mandatory minimums in conspiracy. Tough, yes. Anomalous, perhaps. But not in accord with law. I mean, that'd be my take on it. I mean, I don't see why you— That's not what you're arguing. But I don't see why it's so hard for you to fess up to that. It's a difficult thing. I think Your Honor is correct. I guess I'm struggling with the mandatory minimums don't aggregate all the drug deals that went on for years and years. What they look to is the agreement itself. And so that's why Robinson said no acts are required. And so had there been no acts in an agreement for 5 kilos, or had there been 100 kilos in an agreement for 5 kilos, the mandatory minimum still applies because the agreement is for 5 kilos. And that's— Even if 4.5 of the kilos came and went before you joined the conspiracy? Well, I think that's true. Isn't it—I mean, the problem is that I think Judge Rogers is grappling with is that withdrawal usually means something, or the date you join usually means something in conspiracy law. It's anomalous that it doesn't in this context. Normally in conspiracy law, you could, for example, only be convicted— it doesn't apply. You'd be charged and be convicted only of the overt acts that happened before, during the time you were a member. That's what withdrawal is about. And it's not—you might take it into account in something else, but it means far less in drug cases because there's no overt act requirement under the drug conspiracy statute. And anyway, the mandatory minimums take the possibility away of considering that in this context. Is it hard to admit that? Isn't that true? I believe it's true. And it is somewhat hard to admit. And I say that only because I think it's important to focus on what the agreement was with respect to each participant's involvement. He participated in a conspiracy involving the 5 kilos. And in this case, if Your Honor has any concern about this, from the moment he joined it was a conspiracy. Going forward, it was a conspiracy involving 5 kilos. I understand that. So conceptually, theoretically, he could join it 15 minutes and then get caught. And the conspiracy involved a lot of drugs that had been bought and sold for the previous 10 years. And he said, ah, what a great conspiracy. Look at all the drugs they got. I'm going to join. You join a conspiracy, 15 minutes later you're all caught, you're all charged. It would make sense that you are part of that conspiracy. It's a little bit, I don't know if you want to call it anomalous, it's a little bit striking that the amount of your punishment, which is geared by statute to amounts, should have attributed to you amounts previously before. And under the guidelines it doesn't, but because you have all these reasonable foreseeability and all those connection requirements. But for purposes of statutory minimums where the jury has to make a finding, the jury doesn't take into account that it all happened before. But you're just saying that's the way it now. You're just saying, under guidance, you're just saying that's the way it is, right? Excellent direction. Yes, Your Honor, I'm saying that's the way it is. And in your particular hypothetical, that's fairly clearly the way it is. Lots of drugs, lots of money, I like this, I want to be a part of this, I'm joining. Right. Absolutely. Absolutely. And your punishment depends on how big of a conspiracy it was that you joined. That you joined and you involved yourself in. I think that's exactly correct. What about whether it's plain error or not, the standard here? Your Honor, I think that's a difficult question. And why we argued or why we submitted it as an abuse of discretion is because there was an objection to the supplemental instruction, and there was a discussion, but I think the Court is absolutely correct that the supplemental instruction could not have, defense-proposed supplemental instruction could not have been given without going back to the original instruction and saying I was wrong. Okay, thank you. With respect, unless there's other questions on the jury. No, that's my question. Thank you. With respect to Mr. Watson's argument, Mr. Shadd's argument on behalf of Mr. Watson that he should have been allowed substitution of counsel, this, again, under any of the four prongs in this Court to consider was not an abuse of discretion by the district court. The four factors are timeliness, inquiry, extent of the breakdown, and balance in the factors. The strongest argument and the primary argument raised by Mr. Watson is that of the extent of the breakdown, and I agree with Judge Gibbons that this is an unusual record in that Mr. Dunn was unusually candid about the difficulties here. Notwithstanding that, this Court has the advantage of looking back and determining whether or not the relationship was completely dissolved, and it wasn't. It's fairly clear that it wasn't based on the trial record. Lots of discussion was had about trial strategies. Records were made about trial strategies. Witnesses were cross-examined. I think that demonstrates that the relationship was not dissolved, and the balance of that relationship against the public's interest in moving forward and the co-defendants' interest in having their day in court was appropriately balanced by the Court. Finally, with respect to the multiple jury instructions, or multiple conspiracy, excuse me, multiple conspiracy issue raised by Mr. Shadd, it is still unclear to the government exactly what multiple conspiracies Mr. Smith alleges. He alleges confusion based on his drug dealing downstream to other drug sellers as distinct from the conspiracy he participated in with Mr. Watson. Clearly there's no risk of other evidence tainting him. There's no prejudice to him, and it's unclear exactly what multiple conspiracy he's alleging. Because of that, the Court did not abuse its discretion in denying that jury instruction as well. Your Honors, unless there's other questions, I would ask the Court to refer them. I just have one question. It wasn't even argued, but in terms of the predicate felonies in connection with Watson, I know there was the motion late filed and so forth and so on, but is there some possible question that that first offense wasn't a qualifying predicate? There is no longer a question in this circuit, Your Honor. There is no longer a question at all. He was an adult in the state of Michigan when he was convicted of that. The motion was filed at his direction both before trial and after trial, but there is no question any longer. The law is fairly clear, and that is that so long as he was an adult in the state of conviction, it is a qualifying conviction. Mr. Watson was in Michigan. He's an adult at the age of 17. He was 17. He was convicted in an adult court. And there isn't any question about one year or more than one year involved? There is not, Your Honor. The length of sentence imposed is also not relevant. What drives the felony determination is the maximum. It's the possible sentence, not the actual. Yes. Okay, thank you. Thank you, Your Honor. Mr. Shan. Thank you. Two issues. First is I don't think it's fair that you can look at the fact that defense counsel went on to handle the case and cross-examine witnesses and say, therefore, the relationship didn't break down or therefore there's no prejudice. I cited to the Griffin case in my reply brief to that matter. It's similar to a plea that's not taken, and then you protest your innocence at trial, and then they try to say, well, look, he wouldn't have pled guilty because he still said he was innocent at trial. Well, he had no choice but to go to trial at that point, and that's what the Griffin case says. Is there a problem with using the conduct of defense counsel to find that the trial court committed error? I mean, the defense counsel's conduct really enabled the court to kind of see into the relationship and make an assessment. And, I mean, is it possible that it was not judge error, although perhaps it might have been ineffective assistance of counsel, because perhaps it made the court more likely? I mean, I'm not speculating whether it was or wasn't, but, you know, it just seems to me that might be litigated another day. I would assume that part of it will be litigated another day, but I think, you know, the only focus that the court had at that hearing was whether or not the attorney-client relationship could move forward. The judge is the one you've got to complain about at this point. Absolutely, absolutely, and I just like . . . And your position would be what defense counsel said should have been the court more likely to allow withdrawal and more likely to find a breakdown of the relationship than the reverse. More than that, I think the court . . . The district court, once it was left with this record, was mandated to substitute counsel. I'll just leave you with the . . . This is after the court makes its finding that they're moving forward together to trial. The defense counsel says the attorney-client relationship has broken down so severely that this is really going to be an impossible task. I mean, I'll do it if the court orders me to, but I think there are some serious issues here. I'm not going to be able to spend the time with him to be able to repair the relationship now at this late state. That's what he says after they're forced to move forward to trial together. And, in fact, he tells the court, look, I teach these classes at night. I'm not going to sit down with him during trial and talk to him about the trial. I'm going to go off and do my class. The relationship was in such disrepair, the district court had no choice in this case. Thank you. All right, Mr. Escobedo. Thank you, Your Honor. At trial, my defense on behalf of Mr. Smith was very simply conceding to the fact that we would agree to be responsible for what he did, for his conduct, his behavior, from the standpoint that he was involved in these other transactions with other individuals. In Warner, this court concluded that even though there is a single conspiracy found where there is evidence to the contrary that there may be multiple conspiracies, it is preferable that the multi-conspiracy instruction be given. And that goes to the question, in part, of what Judge Rogers asked earlier with respect to the government in terms of what kind of liability is imposed on an individual that joins a conspiracy at some point later after the creation of the conspiracy. Mr. Weininger claims that there was no prejudice with respect to Mr. Smith. There was no taint. Mr. Smith was awash in prejudice and taint by virtue of the fact that the only instruction that this trial court gave was not one involving the multiple conspiracies. Therefore, resulting in his conviction, in part, because clearly the jury had a question about individual liability and that is what brought about the supplemental instruction that was being proposed by the defense. The court ignored that. The court ignored the kind of explanation the jury should have, layman should have, with respect to conspiracies. Conspiracies are complicated. The law of conspiracy, I should say, is a complicated law. So when you have laypeople sitting on a jury and they're trying to analyze that, it makes it even more complicated. Thank you. Judge Rogers, I want to amplify upon your concern. In this case, the jury found 5 kilograms of cocaine, 280 grams of crack, and a kilogram of heroin. At sentencing on a preponderance standard, the judge found 565 grams of heroin, less than 5 kilograms, 3,300 grams of cocaine, 0 grams of crack, applying the standard that we say should apply. The Martinez case I cited in my brief is a latecomer case. Five kilograms to the whole conspiracy? They said it was there. It should have been one because the guy was caught in the end with one. One transaction. You're a nightmare scenario that you brought up. That's the Martinez case. The Walker case, a post-apprendi case, this is what they said. As a result, the Sixth Circuit had no difficulty talking about swining and recognized mandatory minimum language of A41B1C and 1B1.3A1B, finding that clear sentencing guidelines had modified Pinkerton theory of liability so as to harmonize it with guidelines' goal of sentencing a defendant according to the seriousness of the actual conduct of the defendant and his accomplices. It goes on, citing Young, which I also cite, as a result, we declined to hold defendants presumptively liable for quantities distributed by the conspiracy because it would be difficult to assume Congress intended to employ, under the statute, a sentencing scheme that is completely so at odds with the measured approach clearly required in the guidelines. That's a 2014 post-apprendi case applying, for purposes of an element of the offense, the approach that we think the jury should have been instructed on. That's our case? It's not your case. This is a Seventh Circuit case. Did you cite that in your brief? I did. Respectfully, I cited it in my brief and counsel cited in his pleadings the line of cases, not all of them but most of them, that get to this result. What I would submit to the court one other way, I just want to provide the court one other way to get there, is on the sufficiency as well. And that is that they don't prove the element of the case to deal with your planned error issue. Because I understand that there's a model jury instruction that might be a challenge. One other way to get there is to hold they didn't prove it, on the sufficiency. That was raised as well. That was preserved. And that's another way to get there. Respectfully, Judge Gibbons, I understand your position. I respectfully disagree because I think the authority provides otherwise in other ways. Thank you. Robinson doesn't agree with you. Depends on how you read it. Okay. We appreciate the argument all of you have given, and we'll consider the case carefully. We're especially mindful that Mr. Escobedo and you, Mr. Cowan, were appointed counsel. That's always a hard task, and it's especially hard in this kind of case with multiple issues and multiple defendants. We appreciate very much the service you've rendered to the court and your zealous advocacy on behalf of your clients. Thank you all. Thank you, Your Honor.